# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS H. IBBISON, | ) | 3:23-cv-1379 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LT. SCAGLIARNI, *et al.*, | ) | |
| *Defendants*. | ) | February 14, 2024 |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Thomas H. Ibbison is a now-sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") incarcerated at Cheshire Correctional Institution.[1] He has filed a complaint pursuant to 42 U.S.C. § 1983 against numerous defendants: Lieutenant Scagliarni, Officer Swol, Officer Ericson, Officer Bauza, RN Dave Anglade, Officer Harvey, Officer Daniele, Officer Stone, Officer Vazquez, Dr. Zaidi, Dr. Scott-Mailloux, Officer Bilobeau, Officer Hall, Officer Gerish, Officer Fuller, Lieutenant Scott, Doe 1, Doe 2, Doe 3, Officer Konopelski, RN Prince Asmah, LPN Michelle McDonald, RN Gina Burns, Dr. Omprakash B. Pillai, RN Gwen Hite, Warden Kristen Barone, Deputy Warden Doran, Deputy Warden Maldonado, Deputy Warden Ogando, Counselor Supervisor Dow, Officer Melendez, Captain Danek, LPN Robert Bonetti, Doe 4, Doe 5,[2] Director of Security Santiago, District Administrator Rodriguez, Commissioner Angel Quiros, RN Gwen Hite, and HSAR Coordinator Janine Brennan. Compl., ECF No. 1. In addition, the Court considers whether Plaintiff has alleged any plausible claims against Counselor Hesse and Dr. Rader, who are not named in the case caption or

---

[1] The Connecticut Department of Correction website shows that Plaintiff has been sentenced and is housed at Cheshire CI. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record."). However, at the time of all relevant allegations, Plaintiff was an unsentenced inmate.

[2] Doe 5 is not listed in the case caption but is listed in the description of the parties. Compl. ¶ 34. However, the Court discerns no allegations about conduct by Doe 5.

description of the parties.[3]

Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights during his custody at MacDougall-Walker Correctional Institution ("Walker"). Plaintiff seeks damages and injunctive relief from all Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[4] Based on this initial review, the Court orders as follows.

## I.      FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

---

[3] Under Rule 10(a) of the Federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P. 10(a) ("title of the complaint must name all the parties"). However, the Court considers both Counselor Hesse and Dr. Rader as defendants for purposes of this initial review as Plaintiff's allegations appear to assert claims against them. *See Imperato v. Otsego Cnty. Sheriff's Depart.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016) (citation omitted).

[4] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

On December 6, 2020, while Plaintiff was housed at Walker, Lieutenant Scagliarni came to Plaintiff's cell and asked Plaintiff to step into the hall to speak with him. ECF No. 1 ¶¶ 39, 41. Plaintiff was thereafter approached by numerous officers, including Officers Ericson and Swol, who forced Plaintiff's arms behind his back and employed reverse wrist locks while "shoving" his arm up toward his shoulder from behind. *Id.* ¶ 42. Plaintiff told them his arms were not supposed to be behind his back due to medical orders, but his complaint was ignored. *Id.*

Lieutenant Scagliarni and Officers Ericson and Swol then escorted Plaintiff to the admissions and property area. *Id.* ¶ 43. Plaintiff was compliant, but complained to the escorting-officers and Officer Bauza, who was operating a camera, that he was in extreme pain because of his recent shoulder surgery and because the tight handcuffs were digging into his wrists. *Id.* ¶ 44. Plaintiff's complaints were again ignored. *Id.*

Shortly thereafter, RN Anglade, the medical representative responsible for ensuring Plaintiff's restraints were consistent with his medical condition, joined and also ignored Plaintiff's requests for assistance and failed to explain to the officers Plaintiff's recent shoulder surgery. *Id.* ¶ 45. Plaintiff tried to explain to Scagliarni about his extreme pain caused by Swol and Ericson's arm restraint. *Id.* ¶ 46. But, without warning, Officer Swol pushed Plaintiff forward to avoid Officer Bauza's camera, after which Officer Ericson kicked Plaintiff's legs out from underneath him. *Id.* Plaintiff fell face forward and suffered a gash to "temple region of his left eye," injury to his head, neck, shoulders, and wrists, and Plaintiff "saw stars." *Id.* ¶ 47. Lieutenant Scagliarni deployed a chemical agent to Plaintiff's face, eyes, and open cut, while RN Anglade watched and did not intervene despite Plaintiff's pleading for help. *Id.* ¶ 48.

Defendants Scagliarni, Konopelski, Daniele, Swol, Harvey, Ericson, Bilodeau, Vazquez, and Stone stood while RN Anglade placed a mesh bag over Plaintiff's face and head and pushed

the chemical agent into Plaintiff's eyes and open laceration. *Id.* ¶ 50. RN Anglade then administered a psychotropic drug intravenously without Plaintiff's consent. *Id.* Officer Stone put leg irons on Plaintiff before Plaintiff was placed on a stretcher. *Id.* ¶ 51. The psychotropic drug, which had been ordered by Dr. Zaidi, who was not present at the time, was again administered while Plaintiff was placed on the stretcher. *Id.* ¶ 52.

Plaintiff was transported to UConn Hospital while unconscious under the care of Officers Bilodeau, Vazquez, and Hall. *Id.* ¶ 53. Because Plaintiff was unconscious, Plaintiff was unable to describe his concussion-like symptoms, severe shoulder pain, swollen wrists and hand, blurry vision, and burning eyes to the responding-doctor at Uconn Hospital, Dr. Scott-Mailloux. *Id.* Dr. Scott-Mailloux further sedated Plaintiff without his consent and sutured Plaintiff's laceration. *Id.* ¶ 54. Because Plaintiff was unconscious, no neurological examination was performed. *Id.* Plaintiff now has a visible scar on his left temple. *Id.* ¶ 55.

Plaintiff was transported to the infirmary at MacDougall and placed on behavioral observation status ("BOS") under the supervision of Does 1, 2, and 3, all DOC employees at Walker, who underreported Plaintiff's injuries in their medical reports in an effort to coverup fellow staff wrongdoing. *Id.* ¶ 56. In addition, Lieutenant Scott, an employee of DOC overseeing behavioral observations in the infirmary at Walker, refused to allow pictures to be taken of Plaintiff's injuries. *Id.* ¶ 60.

Nurses Prince and McDonald, who were responsible for bi-lateral wrist checks, failed to report visible swollen wrists, lacerations to the wrists, inability to move the left wrist properly, and swollen and bruised eyes. *Id.* ¶ 57. Plaintiff also reported concussion-like symptoms. *Id.*

On December 7, 2020, Plaintiff saw Dr. Pillai, a medical staff member at Walker, for his injuries. *Id.* ¶ 63. According to Plaintiff, Dr. Pillai failed to properly examine him; nor did Dr.

Pillai order X-rays of his wrists, conduct a neurological examination, or document his medical condition. *Id.* At the time, Plaintiff's face was swollen, his body weight was falling, and he had two black eyes, but Dr. Pillai and the other Defendants failed to report these conditions. *Id.* ¶ 64.

For three days, Plaintiff was denied a shower, which he requested to wash off the chemical agent. *Id.* ¶ 58. In addition, he was not decontaminated from the chemical agent, and he continued to suffer burning and damage to his eyes. *Id.* Plaintiff repeatedly asked Does 1, 2 and 3, Nurses Prince and McDonald, Lieutenant Scott, RN Burns, and Dr. Pillai for a shower. *Id.* ¶ 59. RN Burns finally permitted Plaintiff to shower after three days, but Burns was later disciplined by Lieutenant Doe 4 for allowing Plaintiff to shower. *Id.* ¶ 61.

Nurses Prince, McDonald, and Burns refused to treat Plaintiff's medical needs, which included handcuff injuries, head trauma, dizziness, nausea, severe shoulder pain, burning eyes, and numbness in his hands; nor did they accurately report his injuries in his medical record. *Id.* ¶ 62.

The chemical agent remained in Plaintiff's eyes for so long that his vision was permanently impaired. *Id.* ¶ 65. Due to his head trauma and chemical agent exposure, Plaintiff must now wear prescription glasses, suffers frequent migraine headaches which cause his vision to become blurry and worsen, has neck pain, wrist and hand injuries, and nerve damage. *Id.* ¶¶ 66, 68. He has been prescribed drugs for his migraines caused by the head trauma. *Id.* ¶ 67.

Between December 6, 2020, and December 31, 2020, Plaintiff told every defendant with whom he came into contact that his shoulder felt as if it had been reinjured in the incident with defendants Scagliarni, Ericson, and Swol. *Id.* ¶ 68. He did not receive treatment for these injuries. *Id.*

On December 8, 2020, Plaintiff submitted "informal resolution" to defendants Barone, Doran, Maldonado, and Ogando. *Id.* ¶ 69. He did not receive any responses. *Id.* On December

10, 2020, Plaintiff reported his injuries to defendants Dow and Melendez.  *Id.* ¶ 70.  They said that, if Plaintiff "signed off" on the disciplinary report prepared by Defendants, which he was unable to see or read as a result of the head trauma and chemical agent, he would receive an eye exam and medical care.  *Id.*  While the complaint is unclear about whether Plaintiff signed off on the report, he never received the care.  *Id.*

On December 11, 2020, Plaintiff reported his injuries to Captain Danek, but Captain Danek did nothing in response.  *Id.* ¶ 72.

On December 12, 2020, LPN Bonetti removed Plaintiff's stitches.  *Id.* ¶ 73.  Although Plaintiff described his injuries to LPN Bonetti, Defendant Bonetti refused to examine him, and said that Plaintiff "deserved what happened."  *Id.*

On December 31, 2020, Plaintiff was seen by RN Hite who minimized the extent of Plaintiff's injuries, and also refused to document their full extent.  *Id.* ¶ 74.  Eventually, after her supervisor APRN Schauer arrived, Hite finally documented Plaintiff's injuries and ordered X-rays, which showed a greater separation of the A/C joint in Plaintiff's right shoulder and a ligament injury in Plaintiff's left hand.  *Id.* ¶¶ 75–76.

On December 28, 2020, Plaintiff submitted three grievances complaining of all the misconduct described herein.  *Id.* ¶ 77.  Two were rejected and one was "compromised," with Warden Barone authorizing an investigation by Director of Security Santiago into the incident on December 6, 2020.  *Id.*  Plaintiff appealed all three grievances.  *Id.*  District Administrator Rodriguez rejected two of his appeals and denied the third.  *Id.*

Plaintiff contends that, between December 28, 2020, and April 5, 2021, Defendant Santiago refused to get in touch with Plaintiff despite Plaintiff's best efforts to contact Defendant Santiago about Plaintiff's grievances.  *Id.* ¶¶ 79–88.  Plaintiff has yet to see a copy of the investigation

report, and his complaints and grievances about the lack of investigation have not been answered. *Id.* Plaintiff claims that District Administrator Rodriguez does not return his correspondence about the unfulfilled grievances. *Id.* ¶ 89. Plaintiff sought information from Counselors Dow and Hesse about the investigation but received no substantive assistance. *Id.* ¶¶ 91–92.

On March 16, 2021, Plaintiff had surgery at Uconn Hospital for his right shoulder that required invasive surgery due to the delay in treatment. *Id.* ¶ 115. Plaintiff has received no treatment for the injuries to his left hand and wrists. *Id.* ¶ 143.

On May 5, 2021, Plaintiff wrote to Counselors Hesse and Dow and Warden Barone about inadequate access to a law library and administrative directives. *Id.* ¶ 97. Counselor Dow destroyed her first response and then provided a typed response on May 7, 2021. *Id.*

Plaintiff has written several grievances about his medical issues that were exacerbated by the delay in treatment. *Id.* ¶ 90, 98. Health Services Remedy Coordinator Brennan acted with deliberate indifference to his medical needs by rejecting his grievances. *Id.* ¶¶ 102–105. On August 2, 2021, Plaintiff wrote directly to Commissioner Quiros but did not receive a response. *Id.* ¶ 110.

While Plaintiff attempted relentlessly to follow all procedures to exhaust his administrative remedies and gain access to medical assistance for his serious injuries, Plaintiff was transferred to Cheshire CI. *Id.* ¶ 106.

On June 30, 2021, Dr. Rader (who is not named in either the case caption or the list of defendants) started Plaintiff on Imitrix, a medication that proved ineffective for his migraines. *Id.* ¶ 108. On August 6, 2021, Plaintiff was finally able to see Dr. Rader about the inadequate medication for his migraines and sought treatment for his ligament damage, but Dr. Rader understated Plaintiff's medical conditions and diagnoses. *Id.* ¶ 111. Plaintiff believes this was a

response to his many grievances about delay and lack of treatment. *Id.*

On February 24, 2022, Plaintiff received an MRI on his left wrist, rather than his left hand, which was the injured area. *Id.* ¶ 112. On February 25, 2022, Plaintiff received another MRI for his head trauma that had occurred twenty-six months earlier. *Id.* ¶ 113. At that time, Plaintiff advised the UConn Hospital physician that he had suffered vision loss from either the chemical agent exposure or the use of excessive force. *Id.* After he explained that his migraine medication was not working, the doctor prescribed another migraine medication. *Id.*

On that same day, Plaintiff was provided with a vision field test, which indicated that he was suffering from bi-temporal field vision loss. *Id.* ¶ 114. Plaintiff was then treated by a neuro-ophthalmology specialist, which included several vision tests on August 12, 2022. *Id.* ¶ 116. At that time, Plaintiff explained to the doctor his symptoms resulting from the use of excessive force and how he now was taking a migraine medication that caused constipation. *Id.* The doctor prescribed him a different medication that Plaintiff that provides some relief. *Id.*

## II.    DISCUSSION

Plaintiff asserts claims for violations of his rights under the United States Constitution and the Connecticut Constitution arising for the use of excessive force, seizure, and deliberate indifference to his medical needs and a state common law negligent infliction of emotional distress. He seeks both damages and injunctive relief against Defendants in their individual and official capacities.

### A.   Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.").  This is true with respect to supervisory officials, as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Plaintiff has not alleged any facts in the body of his complaint about conduct by Doe 5 and Officers Fuller and Gerish.  Thus, Plaintiff may not proceed on any claim against these Defendants.

### B.  Official Capacity Claims

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff's claims proceeding in this action are against DOC employees who work at Walker.  As Plaintiff is no longer housed at Walker, his requests for official capacity relief against these Defendants are moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).  Additionally, any claims based on constitutional violations for money damages against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment, as all Defendants are state employees.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

C.  Excessive Force Claims

Because Plaintiff alleges facts concerning the use of excessive force arising in the post-arraignment, pre-sentence context, his claims are analyzed under the Fourteenth Amendment, rather than the Eighth and Fourth Amendments.  *See Casiano v. Ashley*, 515 F. Supp. 3d 19 (W.D.N.Y. 2021) ("For post-arrest, pre-trial detainees, . . . the right 'to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment'") (quoting *Szabo v. Parascandolo*, No. 16-CV-3683 (PKC) (LB), 2019 WL 481925, at *5 (E.D.N.Y. Feb. 7, 2019)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that a claim asserted by a pretrial detainee is reviewed under the Fourteenth Amendment Due Process Clause).  The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 251–52 (2d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

A pretrial detainee can show that an officer's actions constitute punishment if the actions were "taken with an expressed intent to punish" or if "the actions are not rationally related to a legitimate nonpunitive governmental purpose" or "appear excessive in relation to that purpose." *Id.* (internal quotation marks omitted) (quoting *Bell*, 441 U.S. at 538, and *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).  When determining whether an officer's use of force was objectively reasonable, the Court considers the facts and circumstances of the particular case "from the perspective of a reasonable officer on the scene." *Kingsley*, 576 U.S. at 397.  These factors include, but are not limited to, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit

10

the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

In addition, prison officials can be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (quoting *Jean Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) *aff'd*, 461 F. App'x 18 (2d Cir. 2012)).

Plaintiff alleges that Officers Ericson and Swol kicked and pushed him during his escort to punish Plaintiff for requesting medical attention and that Lieutenant Scagliarni deployed a chemical agent for the same reason. These allegations suggest the use of excessive force in violation of the Fourteenth Amendment. Plaintiff has also plausibly alleged that Officer Bauza and RN Anglade had the opportunity but failed to intervene to prevent the use of excessive force, despite Plaintiff's cries for help both during the escort and during the altercations. Accordingly, Plaintiff's allegations are sufficient to state plausible Fourteenth Amendment claims based on the alleged use of excessive force against Lieutenant Scagliarni, Officers Ericson, Swol, and Bauza, and RN Anglade in their individual capacities.

### D.  Fourteenth Amendment Deliberate Indifference

Plaintiff asserts several claims for deliberate indifference to his medical needs, both for his shoulder injury and for the additional injuries suffered from the use of force.  Although Plaintiff brings his deliberate indifference claims under the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment governs claims of deliberate indifference brought by pretrial detainees. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Haslinger v. Westchester Cnty.*, No. 7:18-CV-5619 (PMH), 2020 WL 2061540, at *7 (S.D.N.Y. Apr. 29, 2020).  This is because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner— neither cruelly and unusually nor otherwise."  *Darnell*, 849 F.3d at 29 (internal quotation marks omitted) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) *rev'd on other grounds sub nom.*, *Iqbal*, 556 U.S. at 678)).  Affording the required special solicitude to Plaintiff's *pro se* submissions, the Court will consider Plaintiff's deliberate indifference claims as if they were brought under the Fourteenth Amendment.

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs:  (1) an objective prong, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Id.*  With respect to the first prong of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health."  *Id.* at 30.  With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the

pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.  Negligence is insufficient to satisfy this component.  *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

### 1.  Use of Restraints

Plaintiff alleges that Defendants Ericson, Swol and Scagliarni ignored medical orders concerning restraints during his escort.  Plaintiff also alleges that Defendants Ericson, Swol, Scagliarni, RN Anglade, and Officer Bauza ignored his complaints of extreme pain and cries for help.

A painful or harmful period of restraint can rise to the level of an objectively serious condition of confinement.  *Shand v. Rodriguez*, No. 3:20-cv-1268 (SVN), 2021 WL 5988629, at *6 (D. Conn. Dec. 17, 2021).  At this early stage in the matter, Plaintiff's allegations suffice to support Fourteenth Amendment claims of deliberate indifference to a risk of harm to Plaintiff's health and well-being against Lieutenant Scagliarni, Officers Ericson, Swol, and Bauza, and RN Anglade in their individual capacities.[5]  Each Defendant allegedly participated in subjecting Plaintiff to a significant period of painful and unnecessary restraint.

### 2.  Medical Needs

For a claim of deliberate indifference to medical needs, the objective prong is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'"  *Bellotto v. Cnty. of Orange*, 248 F. App'x

---

[5] The Court notes that Plaintiff's allegation that Officer Stone put leg irons on him prior to his placement on a stretcher does not suggest the use of restraints so harmful as to support a constitutional violation.

232, 236 (2d Cir. 2007) (amended summary order) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)).

"If the 'unreasonable care' consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is 'sufficiently serious.'" *White v. Williams*, No. 9:12-CV-1892, 2016 WL 1237712, at *9 (N.D.N.Y. Jan. 11, 2016), *report and recommendation adopted*, No. 9:12-CV-1892 (GLS/ATB), 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016) (internal quotation marks omitted) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).  A "sufficiently serious" deprivation of a plaintiff's right to due process can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  A degenerative medical condition that does not initially appear serious may, in fact, be serious if it will "result in further significant injury or the unnecessary and wanton infliction of pain" when left untreated or neglected for a long period of time.  *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

For purposes of initial review, the Court considers Plaintiff to have plausibly alleged that he suffers from serious medical needs arising from his exposure to the chemical agent, shoulder injury, and head trauma.

a.   Chemical agent exposure

Plaintiff alleges RN Anglade placed a mesh bag over his head and ground the chemical agent into his eye and open laceration, while Scagliarni, Konopelski, Daniele, Harvey, Ericson, Bilodeau, Vazquez, Stone, and Swol stood by watching this process.

For purposes of initial review, Plaintiff's allegations suffice to suggest Fourteenth Amendment indifference.  Thus, the Court will permit Plaintiff to proceed on Fourteenth

Amendment claims of deliberate indifference to the effects of Plaintiff's chemical agent exposure against Anglade, and failure to intervene against Scagliarni, Konopelski, Daniele, Harvey, Ericson, Bilodeau, Vazquez, Stone and Swol in their individual capacities.

### b.   Decontamination

Plaintiff alleges further that he was deprived of decontamination for three days after his exposure to the chemical agent despite making requests for a shower to Does 1–3, Nurses Prince, McDonald, and Burns, Dr. Pillai, and Lieutenant Scott.  These Defendants all heard Plaintiff's complaints and denied him medical attention, resulting in permanent vision loss.  For initial review purposes, the Court will permit Plaintiff to proceed on his claims of Fourteenth Amendment indifference to his need for decontamination from the chemical agent against Does 1–3, Nurses Prince, McDonald, and Burns, Dr. Pillai, and Lieutenant Scott in their individual capacities.[6]

### c.   Failure to Provide Medical Treatment

Plaintiff alleges that Nurses Prince, McDonald, and Burns refused to provide him with medical treatment for his handcuff injuries and hand numbness, head trauma, shoulder pain, and burning eyes.  He claims further that Dr. Pillai failed to examine him properly, provide a neurological examination, and order him X-rays, and that LPN Bonetti removed his stitches but refused to examine him.

At this initial stage in the matter, Plaintiff's allegations suggest that these Defendants were aware of his medical needs but failed to provide treatment.  Accordingly, Plaintiff may proceed on his Fourteenth Amendment medical indifference claims against Nurses Prince, McDonald, and Burns, LPN Bonetti, and Dr. Pillai in their individual capacities.

---

[6] Plaintiff alleges that Doe 4, a lieutenant, reprimanded Nurse Burns for allowing Plaintiff to shower.  But Plaintiff has not alleged any other facts about Doe 4's involvement with the depriving Plaintiff of decontamination.  Absent such facts, Plaintiff's complaint does not allege a plausible Fourteenth Amendment deliberate indifference claim against Doe 4.

Plaintiff alleges that RN Brennan delayed Plaintiff's medical treatment for his serious conditions by continually rejecting his grievances and wrongfully finding mistakes to substantiate the rejections.  Although an innate generally does not have a right to proper processing of grievances, his allegations suggest that RN Brennan wrongfully identified mistakes so that she could reject his grievances about his medical care.  At this early stage in the matter, the Court will permit Plaintiff to proceed on a Fourteenth Amendment deliberate indifference claim against Brennan in her individual capacity for further development of the record.

Plaintiff's allegations do not, however, state plausible deliberate indifference by RN Hite or Dr. Rader.  Plaintiff claims that RN Hite did not provide him with medical treatment until her supervisor arrived at the appointment on December 31, 2020.  But Plaintiff fails to allege facts that he suffered any objectively serious harm due to the short delay in medical treatment during his appointment.  *See Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir. 2003) (noting where plaintiff alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone.") (alterations in original).

Plaintiff's allegations further indicate that he disagrees with Dr. Rader's medical judgments concerning the migraine medication that Dr. Rader prescribed for him and Dr. Rader's assessment of his ligament damage.  But an inmate's disagreement with his medical provider's medical treatment decision is not sufficient to state a medical deprivation of constitutional dimension.  *See Chance*, 143 F.3d at 703; *see also Gonzalez v. Sarreck*, 2011 WL 5051341, at *18 (S.D.N.Y. Oct. 24, 2011) (noting "disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under [section] 1983.") (quoting *Woods v. Goord*, No. 01 Civ. 3255(SAS), 2002 WL 31296325, at *6 (S.D.N.Y. Oct.10,

16

2002)).  In most instances, an inmate's challenge to a provider's medical judgment will raise an issue of negligence or medical malpractice that is insufficient to amount to a constitutional claim. *See e.g.*, *Boyd v. Deasis*, 524 F. Supp. 3d 128, 144 (W.D.N.Y. 2021) (holding that a pretrial detainee's disagreement with medical treatment was insufficient to support a constitutional deliberate indifference claim).

"In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as evident when treatment recommendations are not derived from "sound medical judgment," but rather from "ulterior motives."  *Chance*, 143 F.3d at 703–04 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives).  Here, however, Plaintiff has put forward no nonconclusory allegations suggesting that Dr. Rader acted on the basis of ulterior motives rather than his medical judgment.

Plaintiff's claims against Dr. Rader and RN Hite are therefore dismissed.

### d.  Correctional staff interference with medical treatment

Plaintiff's complaint asserts that several correctional staff failed to provide him medical treatment.  Correctional staff may act with deliberate indifference if they intentionally deny or delay access to medical care or intentionally interfere with an inmate's prescribed treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see Roundtree v. City of New York*, No. 15 Civ. 8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) ("a plaintiff must prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment.") (internal quotation marks omitted).

As part of these allegations, Plaintiff complains that the supervisory officials—Commissioner Quiros, Warden Barone and Deputy Wardens Doran, Maldonado, and Ogando—failed to respond to his grievances or correspondence.  As previously noted, the Second Circuit has established that a plaintiff must plead that supervisory defendants violated a constitutional amendment "by [their] own conduct, not by reason of [their] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619.  "A supervisor's mere knowledge . . . is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution." *Id.* at 616–17 (internal quotation omitted).  "[A]s a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (quotation marks omitted) (*Burns v. Fischer*, 2014 WL 1413387, at *5 (W.D.N.Y. Feb. 3, 2014)).  Here, Plaintiff's complaint does not allege facts to reflect that any of these supervisory defendants acted with deliberate indifference to his medical needs.  The claims against Commissioner Quiros, Warden Barone and Deputy Wardens Doran, Maldonado, and Ogando, are therefore dismissed.

Plaintiff also claims that he never received medical care as promised by Counselor Supervisor Dow and Officer Melendez if he "signed off" on a disciplinary report.  But his allegations fail to suggest that Dow or Melendez took action to interfere with or deny Plaintiff medical care.  Likewise, Plaintiff does not allege any inference that Defendants Bilodeau, Vazquez, or Hall disregarded any risk of harm to Plaintiff during his transport to UConn Hospital.  Accordingly, Plaintiff fails to state a claim against these Defendants.

Plaintiff claims that Captain Danek failed to call for medical assistance after Plaintiff reported his injuries.  For purposes of initial review, the Court concludes that Plaintiff has sufficiently alleged that Captain Danek acted with indifference to his serious medical needs.  Thus,

Plaintiff may proceed against Captain Danek in his individual capacity.

e.   Failure to Properly Report Medical Injuries

Plaintiff makes assertions that MacDougall staff Does 1–3 and RNs Hite, Burns, Prince, and McDonald, and Drs. Pillai and Rader failed to properly report his injuries.

District courts have generally declined to find that false reporting alone gives rise to an independent constitutional claim under Section 1983. *See, e.g.*, *Porter v. Bunch*, No. 16-CV-5935 (KMK), 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019); *Bloomfield v. Wurzberger*, No. 9:08-CV-619 (GLS/RFT), 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) ("The filing of a false entry in medical records, without more, does not constitute a constitutional violation."). Falsification of a medical record may, however, indicate that a defendant acted with deliberate indifference to that plaintiff's medical needs. *See Ruggiero v. Canfield*, No. 14-CV-307 (LF), 2017 WL 9485692, at *15 (W.D.N.Y. Mar. 23, 2017), *report and recommendation adopted*, No. 14-CV-307 (RJA), 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017) (noting that discrepancies in the medical record could be construed as attempts to minimize the serious nature of plaintiff's lump, leading to denial of biopsy referral); *White v. Clement*, 116 F. Supp. 3d 183, 188–89 (W.D.N.Y. 2015) (evidence that registered nurse failed to document properly plaintiff's symptoms indicating possible adverse reaction to prescription medication and continued same prescription could constitute deliberate indifference to inmate's serious medical need).

Plaintiff has properly alleged that RNs Prince and McDonald and Dr. Pillai failed to accurately document his visible injuries.  Compl. ¶¶ 57, 64.  Because allegations sufficiently stating that a medical provider failed to document visible injuries may support a claim for deliberate indifference, *see Porter*, 2019 WL 1428431 at *10, Plaintiff may proceed on a deliberate indifference claim against Defendants Prince, McDonald, and Pillai on this theory.

However, as against Does 1–3, RNs Hite and Burns, and Dr. Rader, Plaintiff's conclusory allegations do not suggest that these Defendants acted intentionally or recklessly to deprive Plaintiff of necessary medical treatment by falsely reporting or under reporting his visible injuries. Thus, the court will not permit Plaintiff to proceed on Fourteenth Amendment claims arising solely from falsely or under reporting his injuries in the record against these Defendants.

E. <u>Fourteenth Amendment Unauthorized Medical Treatment</u>

Plaintiff alleges that RN Anglade administered medication ordered by Dr. Zaidi without his consent, and that RN Scott-Mailloux sedated him without consent and then provided medical treatment to close his laceration. The Fourteenth Amendment "protects the individual's liberty interest in making the decisions that affect his health and bodily integrity." *Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006). A "person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990); *see* also *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment."); *Washington v. Harper,* 494 U.S. 210, 221 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs"). To state a claim for a substantive due process deprivation for a cognizable liberty interest, a plaintiff must allege facts indicating that defendants' "alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau,* 471 F.3d 363, 369–70 (2d Cir. 2006) (citations and internal quotation marks omitted).

Here, Plaintiff has not alleged any facts to support an inference that Defendants' conduct was arbitrary, conscience-shocking or oppressive when they provided him medication and medical

treatment without his consent under the alleged circumstances requiring his transport to a hospital for treatment, given that Plaintiff was unconscious and undoubtedly required medical attention despite his inability to provide consent for such treatment.  Accordingly, Plaintiff has not alleged a Fourteenth Amendment substantive due process violation for this alleged conduct by Defendants RN Anglade, Dr. Zaidi, or RN Scott-Mailloux.

F.   First Amendment Retaliation

Plaintiff's allegations suggest that he believes that Dr. Rader understated Plaintiff's injuries to retaliate against Plaintiff for filing grievances.

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).  The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

Here, Plaintiff has satisfied the first element because "[p]rotected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20-cv-1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020).  But he has not alleged any facts to support an inference of a causal connection between Dr. Rader's medical treatment decision and Plaintiff's grievance filings.  Plaintiff has provided no explanation as to Dr. Rader's knowledge of Plaintiff's grievances or why Dr. Rader would retaliate against Plaintiff

through inadequate medical treatment.  Consistent with the Second Circuit instruction to approach inmate retaliation claims with some measure of skepticism, the Court will not permit Plaintiff to proceed on a retaliation claim against Dr. Rader based upon his wholly conclusory assertion that a defendant acted with a retaliatory motive.

G.  Deprivation of Right to Court Access

Plaintiff complains that he had inadequate access to the law library and administrative directives.  The Court construes these allegations as asserting a violation of his constitutional right to court access.

The First Amendment to the United States Constitution (in conjunction with the other constitutional provisions) guarantees prisoners "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. Hames*, 810 F.3d 344, 346 (2d Cir. 1987).  But, to prevail on a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010).  To state a claim for denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants.  *Lewis*, 518 U.S. at 351–53.  To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim.  *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost . . . plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could

demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (footnotes omitted)).

Here, Plaintiff has not alleged that any interference with his right to court access frustrated a nonfrivolous claim pursued in court. Accordingly, any access to the court claims must be dismissed as not plausible.

## H.  Inadequate Grievance Review and Administrative Directive Violation

To the extent Plaintiff complains about inadequate grievance review, "[i]t is well-established that inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[ ] not give rise to a cognizable § 1983 claim." *Brown v. Ruiz*, No. 3:18-CV-1235 (JAM), 2019 WL 1533438, at *3 (D. Conn. Apr. 9, 2019) (internal quotation marks and citations omitted); *see also Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 7879729, at *7 (D. Conn. Oct. 31, 2019) ("Plaintiff does not have a protected liberty interest in having correctional officials investigate his complaints, through the grievance process or otherwise."); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) ("prisoners do not have a due process right to a thorough investigation of grievances") (citing *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341–42 (S.D.N.Y. 2003)). Likewise, "allegations that a prison official violated the procedures set forth" in an Administrative Directive or other policy "do not state a claim of a violation of an inmate's constitutional rights." *Olivencia v. Pun*, No. 3:21CV00739 (KAD), 2021 WL 3173137, at *4 (D. Conn. July 27, 2021) (citing *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008)).

Accordingly, any claim based on an insufficient grievance review or administrative directive violation must be dismissed.

I.   Right to an Investigation

Plaintiff also complains about a lack of investigation by Director of Security Santiago and failure to provide him information about the investigation by Defendants Dow and Hesse.  But an inmate has no "constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014); s*ee also Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) (inmates alleging beating by prison guards lack standing to challenge prison officials' request to magistrate not to issue arrest warrants).  "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in a prosecution or nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Joyce v. Hanney*, No. 3:05cv1477 (WWE), 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) (prisoner has no constitutional right to have defendants disciplined or prosecuted).

Thus, Plaintiff's allegations arising from a lack of investigation or failure to provide him information about the status of the investigation do not raise any plausible constitutional claims.

J.   State Constitutional Claim

Plaintiff asserts violation of his rights under the Connecticut Constitution, Article First, section 7 based on the use of excessive force.  The Connecticut Supreme Court has created a cause of action under Article first, sections 7 and 9 for a *Bivens*-type clam.  However, it has not applied sections 7 or 9 to a case filed by an inmate or detainee regarding use of excessive force by correctional staff or prison conditions of confinement.  Given that this is a novel and undeveloped issue of state law, and out of deference to the State as the final arbiter of its own constitution, the Court declines to exercise supplemental jurisdiction over Plaintiff's excessive force claim under Article first, section 7 of the Connecticut Constitution.  *See* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the

claim raises a novel or complex issue of State law."); *see also Baltas v. Dones*, No. 3:22-cv-38(MPS), 2022 WL 1239989, at \*20 (D. Conn. Apr. 27, 2022) (declining to exercise supplemental jurisdiction over claims under Article first, sections 7 and 9); *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at \*12–13 (D. Conn. Nov. 4, 2022) (declining to read private causes of action into Article first, sections 8 and 9) (citing *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23–25 (D. Conn. 2005) (declining to recognize private right of action under various provisions of the Connecticut Constitution, including Article first, sections 4, 5, 7, 8, 9, 10, 14, and deferring to state courts to recognize such causes of action in the first instance)).

### K.  Negligent Infliction of Emotional Distress

Plaintiff asserts his claim of negligent infliction of emotional distress against Defendants, who are state employees, for damages in their individual capacities.

Under Connecticut law, to prevail on a claim of negligent infliction of emotional distress, a plaintiff must prove:  "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

But Plaintiff claims negligent infliction of emotional distress without providing "any specificity regarding the severity of" his "emotional distress."  *Ibbison v. Quiros*, No. 3:22-cv-1163 (SVN), 2023 WL 1766440, at \*18 (D. Conn. Feb. 3, 2023).  In addition, under state statutory law, state employees cannot be held liable for damages in their individual capacities for claims based solely on negligence and within the scope of their employment.  Specifically, Connecticut General Statutes § 4-165 provides:  "No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties

or within the scope of his or her employment." (emphasis added). Thus, because Plaintiff alleges that all actions were taken within the scope of Defendants' employment, all Defendants are statutorily immune from any claim for damages based solely on negligence. In addition, even if Plaintiff's negligence claim were not barred by section 4-165, Plaintiff's negligent infliction of emotional distress claim is insufficient as wholly conclusory. Plaintiff's claim for negligent infliction of emotional distress is thus dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his Fourteenth Amendment individual capacity claims based on:

1. Excessive force (or failure to intervene) against Lieutenant Scagliarni, Officers Ericson Swol, and Bauza and RN Anglade;

2. Deliberate indifference to Plaintiff's injuries from the use of restraints absent penological reason against Lieutenant Scagliarni, and Officers Ericson, Swol, and Bauza and RN Anglade;

3. Deliberate indifference to Plaintiff's harm from effects of chemical agent exposure against RN Anglade, Scagliarni, Konopelski, Daniele, Harvey, Ericson, Bilodeau, Vazquez, Stone, and Swol.

4. Deliberate indifference to Plaintiff's need for decontamination from the chemical agent against Does 1-3, RNs Prince, McDonald and Burns, Dr. Pillai and Lieutenant Scott;

5. Deliberate indifference to Plaintiff's need for medical treatment against RNs Prince, McDonald, Burns, and Brennan, LPN Bonetti, Dr. Pillai, and Captain Danek.

6. Deliberate indifference to Plaintiff's need for medical treatment against RNs Prince and McDonald and Dr. Pillai for failure to document Plaintiff's visible injuries.

The Court DISMISSES all official capacity claims and state law negligent infliction of emotional distress claims without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state constitutional claim pursuant to 28 U.S.C. § 1367(c).

Plaintiff does not allege any plausible claims against Defendants Fuller, Gerish, Hall, Zaidi, Scott-Mailloux, Barone, Doran, Maldonado, Ogando, Dow, Melendez, Doe 4, Doe 5, Santiago, Quiros, or Hite. In addition, the Court determines that Plaintiff has not alleged plausible claims against either Counselor Hesse or Dr. Rader, who are not a named in the case caption.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth in items one through five above against Defendants Ericson, Bauza, Swol, Scagliarni, Anglade, Konopelski, Daniele, Harvey, Bilodeau, Vazquez, Stone, Does 1–3, Nurses Prince, McDonald and Burns, Dr. Pillai, Lieutenant Scott, LPN Bonetti, RN Brennan, and Captain Danek, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **March 28, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named in items one through five above in their individual capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **March 24, 2024**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants

named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **March 24, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.


**SO ORDERED** at Hartford, Connecticut, this 14th day of February, 2024.


     */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE