## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS H. IBBISON, | ) | 3:23-cv-1379 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LT. SCAGLIARNI, *et al.*, | ) | |
| *Defendants*. | ) | November 27, 2024 |

### INITIAL REVIEW ORDER

*Pro se* plaintiff Thomas H. Ibbison filed his original complaint in this action, alleging incidents that occurred while he was an unsentenced inmate in the custody of the Connecticut Department of Correction ("DOC").[1] Plaintiff's original complaint named numerous defendants. Compl., ECF No. 1. On February 14, 2024, the Court entered an Initial Review Order permitting Plaintiff to proceed on Fourteenth Amendment individual capacity claims based on: (1) excessive force (or failure to intervene) against Lieutenant Scagliarni, Officers Ericson, Swol, and Bauza, and RN Anglade; (2) deliberate indifference to Plaintiff's injuries from the use of restraints absent penological reason against Lieutenant Scagliarni, and Officers Ericson, Swol, and Bauza, and RN Anglade; (3) deliberate indifference to Plaintiff's harm from effects of chemical agent exposure against RN Anglade, Lieutenant Scagliarni, and Officers Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, and Swol; (4) deliberate indifference to Plaintiff's need for decontamination from the chemical agent against Does 1-3, RNs Asmah and Burns, LPN McDonald, Dr. Pillai, and Lieutenant Scott; (5) deliberate indifference to Plaintiff's need for medical treatment against RNs Asmah and Burns, HSAR Coordinator Brennan, LPNs McDonald and Bonetti, Dr. Pillai, and Captain Danek; and (6) deliberate indifference to Plaintiff's need for

---

[1] The DOC website shows that Plaintiff is now sentenced and housed at Cheshire Correctional Institution. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record.").

medical treatment against RN Asmah, LPN McDonald, and Dr. Pillai for failure to document Plaintiff's visible injuries. Initial Review Order ("IRO"), ECF No. 10. The Court dismissed all official capacity claims and state law negligent infliction of emotional distress claims and declined to exercise supplemental jurisdiction over Plaintiff's state constitutional claim pursuant to 28 U.S.C. § 1367(c). *See id.* The Court also dismissed all claims against Defendants Fuller, Gerish, Hall, Zaidi, Scott-Mailloux, Barone, Doran, Maldonado, Ogando, Dow, Melendez, Doe 4, Doe 5, Santiago, Quiros, and Hite. *Id.*

On April 25, 2024, Plaintiff filed his Amended Complaint pursuant to 42 U.S.C. § 1983 against Defendants Lieutenant Scagliarni, Officer Swol, Officer Ericson, Officer Bauza, RN Dave Anglade,[2] Officer Harvey, Officer Daniele, Officer Stone, Officer Vazquez, Dr. Zaidi, Dr. Danielle Scott-Mailloux,[3] Officer Bilobeau,[4] Officer Hall, Officer Gerish, Officer Fuller, Lieutenant Scott, Officer Does 1-3, Officer Konopelski, RN Prince Asmah,[5] LPN Michelle McDonald, RN Gina Burns, Dr. Omprakash B. Pillai, Warden Kristen Barone, Deputy Warden Doran, Deputy Warden Maldonado, Deputy Warden Ogando, Counselor Supervisor Dow, Officer Melendez, Captain Danek, Doe 4, LPN Robert W. Bonetti, Director of Security Santiago, District Administrator Rodriguez, Commissioner Angel Quiros, RN Gwen Hite, HSAR Coordinator Janine Brennan, and Dr. Brian Rader.[6] Am. Compl., ECF No. 14 at 1.

Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights

---

[2] Plaintiff also spells this Defendant's name as "Angelade." The Court refers to this Defendant according to the spelling provided in the case caption.
[3] Plaintiff also spells this Defendant's name as "Scott-Malloux." The Court refers to this Defendant according to the spelling provided in the case caption.
[4] Plaintiff also spells this Defendant's name as "Bilodeau." The Court refers to this Defendant according to the spelling provided in the case caption.
[5] Plaintiff also refers to this Defendant using their first name "Prince," rather than their last name "Asmah." The Court refers to this Defendant using their last name "Asmah."
[6] Plaintiff also mentions a Defendant Doe 5 in the "Parties" section of his amended complaint, *see* ECF No. 14 ¶ 34. The Court considers whether Plaintiff's allegations state a claim against Defendant Doe 5, despite that this person is not included in the case caption.

during his custody at MacDougall-Walker Correctional Institution ("Walker"). Plaintiff seeks

damages and injunctive relief from all Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a governmental

entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the

amended complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[7] Based on

this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the amended complaint but

summarizes only those facts necessary to provide context for initial review.

On December 6, 2020, while Plaintiff was housed at Walker, Plaintiff had a conversation

with a Licensed Practicing Counselor in his cell. ECF No. 14 ¶¶ 39–40. Lieutenant Scagliarni

later came to Plaintiff's cell and asked him to step into the hall to speak with him, and Plaintiff

complied. *Id.* ¶ 41. Plaintiff was thereafter approached by numerous officers, including Officers

Ericson and Swol, who forced Plaintiff's arms behind his back and employed reverse wrist locks

---

[7] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

while "shoving" his arm up toward his shoulder from behind.  *Id.* ¶ 42.  Plaintiff had recently had

surgery and this position was in direct contravention of Plaintiff's medical orders.  *Id.*  Plaintiff

told them he was not supposed to be rear-cuffed due to medical orders, but his complaint was

ignored.  *Id.*

    Lieutenant Scagliarni and Officers Ericson and Swol escorted Plaintiff to the admissions

and property area.  *Id.* ¶ 43.  Plaintiff was compliant but complained to the officers and Officer

Bauza, who was operating the camera, that he was in extreme pain because of his recent shoulder

surgery and the tight handcuffs.  *Id.* ¶ 44.  His complaints were largely ignored.  *Id.*

    RN Anglade, a nurse who was responsible for ensuring Plaintiff's restraints were consistent

with his medical condition, ignored Plaintiff's requests for assistance and failed to explain

Plaintiff's recent shoulder surgery to the other officers—despite that he had been involved with

Plaintiff's post-surgery treatment.  *Id.* ¶ 45.  Plaintiff tried to tell Lieutenant Scagliarni about his

extreme pain during his escort.  *Id.* ¶ 46.

    Officer Ericson then kicked Plaintiff's legs out from underneath him and Officer Swol

pushed Plaintiff forward.  *Id.*  Plaintiff fell face forward and suffered a gash to his "temple region

of his left eye," and injuries to his head, neck, shoulders, and wrists; he also saw "stars" and had

the "wind" knocked "from his lungs."  *Id.* ¶ 47.  While Plaintiff lay in a pool of blood, Lieutenant

Scagliarni gratuitously deployed a chemical agent to his face, eyes, and open cut, while RN

Anglade watched and did not intervene despite Plaintiff's pleas for help.  *Id.* ¶ 48.

    Then, Defendants Scagliarni, Konopelski, Daniele, Swol, Harvey, Ericson, Bilobeau,

Vazquez, and Stone stood by while RN Anglade placed a mesh bag over Plaintiff's face and head,

which ground the chemical agent into his eyes and open laceration.  *Id.* ¶ 50.  RN Anglade then

administered a psychotropic drug intravenously without Plaintiff's consent; the drug had been

ordered by Dr. Zaidi, who was not present at the time. *Id.* ¶¶ 50, 50.1, 52. Officer Konopelski relieved Officer Swol, and Officer Ericson relieved Officer Daniele. *Id.* Officer Bilobeau restrained Plaintiff's left leg; Officer Harvey restrained Plaintiff's right leg; and Officer Stone put leg irons on Plaintiff (as directed by Lieutenant Scagliarni) before Plaintiff was placed on a stretcher. *Id.* ¶ 51. While this was occurring, Plaintiff was begging to have his cuffs undone to relieve his shoulders that were in extreme pain. *Id.* ¶ 50.1.

Plaintiff was transported to UCONN Hospital while unconscious, under the care of Officers Bilobeau, Vazquez, and Hall, who failed to describe the extent of force used on Plaintiff and the severity of Plaintiff's injuries to Dr. Scott-Mailloux. *Id.* ¶¶ 53, 53.1. Due to the use of the psychotropic drug, Plaintiff was unable to advocate for himself so that he could receive adequate medical treatment regarding his needs for his injuries, shoulder surgery recovery, and decontamination. *Id.* ¶ 50.1. Specifically, he was unable to describe his concussion-like symptoms, severe shoulder pain, swollen wrists and hand, blurry vision, and burning eyes to Dr. Scott-Mailloux. *Id.* ¶ 53. Dr. Scott-Mailloux further sedated Plaintiff without his consent and sutured Plaintiff's laceration. *Id.* ¶¶ 53–54, 54.1. However, Dr. Scott-Mailloux failed to treat Plaintiff's wrist injuries, which were later determined to be ligament injuries; failed to afford him decontamination from the chemical agent, which damaged his eyes. *Id.* ¶ 54.1. As Plaintiff was not conscious, no neurological examination was performed and no treatment was provided for Plaintiff's head trauma. *Id.* Plaintiff now has a visible scar on his left temple and suffers from migraines. *Id.* ¶¶ 54.1, 55.

Plaintiff claims that Officers Bilobeau, Vazquez, and Hall rushed him to be transported back to Walker instead of allowing him to regain consciousness at UCONN Hospital. *Id.* ¶ 53.1. At Walker, Plaintiff was placed in the infirmary on behavioral observation status ("BOS") under

the supervision of Does 1, 2, and 3. *Id.* ¶ 56. Plaintiff claims that Officer Gerish was ordered to videotape his escort to the infirmary. *Id.* ¶ 55.1. During this time, Plaintiff was not decontaminated. *Id.* Plaintiff also made these Defendants all aware of his pain, injuries from the excessive force, and that his shoulder appeared to be separating; Defendants did not act to advise medical staff of his medical needs. *Id.* In addition, Does 1–3 underreported Plaintiff's injuries in their medical reports. *Id.* ¶¶ 56, 56.1. Despite Plaintiff's pleas for help, Does 1–3 failed to decontaminate Plaintiff from the chemical agent or treat his serious medical needs. *Id.* ¶ 56.1.

Lieutenant Scott was the supervisor in charge and refused to permit pictures to be taken of Plaintiff's injuries. *Id.* ¶¶ 55.1, 60. In the infirmary, Plaintiff was strip searched and left naked under the order of Lieutenant Scott. *Id.* ¶ 55.1. Lieutenant Scott ordered Officer Fuller, who had relieved Officer Gerish as the camera operator, to remove Plaintiff's cuffs to conduct the search and instructed Officer Vazquez to reapply the wrist restraints. *Id.* ¶ 55.1. Lieutenant Scott ordered excessively tight wrists restraints be re-applied. *Id.*

RN Asmah and LPN McDonald, who were responsible for bilateral wrist checks, failed to report and treat Plaintiff's visibly swollen wrists, lacerations to the wrists, inability to move the left wrist properly, and swollen and bruised eyes. *Id.* ¶¶ 57, 62. Plaintiff had concussion-like symptoms, including dizziness, headaches, and nausea. *Id.*

For three full days, Plaintiff was denied a shower. *Id.* ¶ 58. In addition, he was not decontaminated from the chemical agent and so continued to suffer burning and damage to his eyes. *Id.* Plaintiff repeatedly asked Does 1, 2 and 3, RNs Asmah and Burns, LPN McDonald, Lieutenant Scott, and Dr. Pillai for a shower. *Id.* ¶ 59. RN Burns finally permitted Plaintiff to shower after three days, but Burns was later disciplined by Lieutenant Doe 4. *Id.* ¶ 61. Lieutenant Doe 4 interfered with Plaintiff's ability to be decontaminated and wash off blood for three days.

*Id.* ¶ 67.1.

On December 7, 2020, Plaintiff saw Dr. Pillai.  *Id.* ¶ 63.  The doctor failed to properly examine him and did not order X-rays of his wrists, conduct a neurological examination, provide him with decontamination for his eyes and face, or document his medical condition.  *Id.*  At the time, Plaintiff's face was swollen and he had two black eyes, but Dr. Pillai failed to report these conditions.  *Id.* ¶ 64.

The chemical agent remained in Plaintiff's eyes for so long that his vision was permanently impaired.  *Id.* ¶ 65.  Due to his head trauma and chemical agent exposure, Plaintiff must now wear prescription glasses; he suffers frequent migraine headaches, which cause his vision to become blurry and worsen; and he has neck pain, wrist and hand injuries, and nerve damage.  *Id.* ¶¶ 66, 68.  He has been prescribed drugs for his migraines caused by the head trauma.  *Id.* ¶ 67.

Between December 6, 2020, and December 31, 2020, Plaintiff told every Defendant with whom he came into contact that his shoulder felt as if it had been reinjured in the incident with Defendants Lieutenant Scagliarni and Officers Ericson and Swol.  *Id.* ¶ 68.  Yet he received no treatment for any of the injuries.  *Id.*

On December 8, 2020, Plaintiff submitted "informal resolution" to Defendants Warden Barone and Deputy Wardens Doran, Maldonado, and Ogando.  *Id.* ¶ 69.  He did not receive any responses.  *Id.*  Plaintiff alleges that he wrote inmate requests to Warden Barone and Deputy Wardens Doran, Ogando, and Maldonado, who were supervisory officials, to complain about inadequate medical treatment for his injuries from the severe use of excessive force and their allowing a policy that "could be construed to inflict the infliction of []wanton and unnecessary use of excessive force."  *Id.* ¶ 69.1.  They took no action.  *Id.*

On December 10, 2020, Plaintiff was in his segregation cell and reported his injuries and

his lack of decontamination to Defendants Counselor Supervisor Dow and Officer Melendez.  *Id.* ¶¶ 70.1, 71.1.  Officer Melendez urged Plaintiff to sign off on a disciplinary report despite that Plaintiff could not see, and promised Plaintiff that he would receive an eye exam and medical care if he did so.  *Id.* ¶¶ 70, 70.1.  Counselor Supervisor Dow did not make proper notes of all of Plaintiff's visible injuries or take photos, as Plaintiff requested.  *Id.* ¶ 71.1.  Plaintiff advised Counselor Supervisor Dow that camera footage would expose officers' lies, but she was not concerned and failed to inform medical staff about Plaintiff's injuries or permit Plaintiff to talk to the state police.  *Id.*

On December 11, 2020, Plaintiff reported his injuries to Captain Danek, but the captain did nothing.  *Id.* ¶ 72.

On December 12, 2020, LPN Bonetti removed Plaintiff's stitches.  *Id.* ¶ 73.  Although Plaintiff described his injuries, Bonetti refused to examine him and said that Plaintiff "deserved what happened."  *Id.*

On December 31, 2020, Plaintiff was seen by RN Hite who minimized his injuries and thereby delayed his treatment, although she had received four inmate requests from him about his serious medical needs.  *Id.* ¶¶ 74, 74.1.  Eventually after her supervisor APRN Schauer arrived, RN Hite documented what Plaintiff was stating and ordered X-rays (or was ordered to do so), which showed a separation of the scapholunate interval of Plaintiff's left hand that looked like a ligament injury.  *Id.* ¶¶ 74.1, 75–76.

On December 28, 2020, Plaintiff submitted three grievances complaining of misconduct. *Id.* ¶ 77.  Two were rejected and one was compromised, with Warden Barone authorizing an investigation by Director of Security Santiago into the incident on December 6, 2020.  *Id.*  Plaintiff appealed all three grievances.  *Id.*  District Administrator Rodriguez rejected two of his appeals

and denied the third. *Id.* Plaintiff continued to write to various Freedom of Information officials and prison administrators. *Id.* ¶¶ 79–89. He also wrote to the medical department about ongoing issues stemming from the original incident. *Id.* ¶ 90.

Plaintiff contends that, to date, Director of Security Santiago has yet to get in touch with him; he has yet to see a copy of the investigation report; and he has not received responses to his complaints and grievances about the lack of investigation. *Id.* ¶¶ 79-89. He claims that District Administrator Rodriguez does not return his correspondence. *Id.* ¶ 89. He asserts Warden Barone and District Administrator Rodriguez acted with reckless disregard to his serious medical needs, failed to act to protect him, and failed to prohibit rear cuffing after an injury, excessive chemical agent exposure, lack of decontamination, and misuse of force. *Id.* ¶ 89.1.

Plaintiff sought information from Counselor Supervisor Dow, another counselor named Hesse, and Director of Security Santiago about the investigation as he sought to hold the staff responsible for his injuries, but received no substantive assistance. *Id.* ¶¶ 91–92, 91.1. Plaintiff claims that Santiago had the ability to change the policy regarding applicability of rear cuffing. *Id.* ¶ 91.1.

On March 16, 2021, Plaintiff had surgery at UCONN Hospital for his right shoulder, which required more invasive surgery due to the delay in treatment and due to the greater separation of his AC joint resulting from the excessive force incident. *Id.* ¶ 115. Plaintiff has received no treatment for the injuries to his left hand and wrists. *Id.* ¶ 118.

On May 5, 2021, Plaintiff wrote to Counselors Hesse and Dow and Warden Barone about inadequate access to a law library and administrative directives. *Id.* ¶ 97. Counselor Supervisor Dow destroyed her first response and then provided a typed response on May 7, 2021. *Id.*

Plaintiff has written several grievances about his medical issues that were exacerbated by

the delay in treatment. *Id.* ¶¶ 90, 98. HSAR Coordinator Brennan acted with deliberate indifference to his medical needs by rejecting his grievances. *Id.* ¶¶ 102–05.

On August 2, 2021, Plaintiff wrote directly to Commissioner Quiros about his assault, lack of medical care, and mistreatment, but did not receive a response. *Id.* ¶¶ 110, 110.1.

While Plaintiff attempted relentlessly to follow all procedures to exhaust his administrative remedies and gain access to medical assistance for his serious injuries, Plaintiff was transferred to Cheshire CI. *Id.* ¶ 106.

Plaintiff claims that he sought treatment from Dr. Rader while housed at Corrigan Correctional Institution. *Id.* ¶¶ 25.3, 108.1. He claims that Dr. Rader ordered an MRI on the wrong part of his hand, despite Dr. Rader's access to Plaintiff's X-rays. *Id.* ¶¶ 108.1, 112. In response to Plaintiff's complaint of chronic headaches, Dr. Rader started Plaintiff on Imitrix, a "cheap" medication that proved ineffective for his migraines. *Id.* ¶¶ 108, 108.1, 111. On August 6, 2021, Plaintiff was finally able to see Dr. Rader about the inadequate medication for his migraines and sought treatment for his ligament damage and right shoulder, but Dr. Rader understated Plaintiff's medical conditions and diagnoses. *Id.* ¶ 111. Dr. Rader also failed to issue him an order to prohibit his being rear-cuffed. *Id.* ¶ 108.1.

On February 25, 2022, Plaintiff finally received another MRI for his head trauma that had occurred twenty-six months earlier. *Id.* ¶ 113. At that time, Plaintiff advised the UCONN Hospital physician that he had suffered vision loss from either the chemical agent exposure or the use of excessive force. *Id.* After he explained that his migraine medication was not working, the doctor prescribed another migraine medication. *Id.*

On that same day, Plaintiff was provided with a vision field test, which indicated that he was suffering from bi-temporal field vision loss. *Id.* ¶ 114. Plaintiff then saw a neuro-

ophthalmology specialist and had several vision tests on August 12, 2022.  *Id.* ¶ 116.  At that time, Plaintiff explained to the doctor all of his symptoms resulting from the use of excessive force and how he now was taking a migraine medication that caused constipation.  *Id.*  The doctor prescribed him a different medication that Plaintiff continues to take and provides some relief.  *Id.*

## II.    DISCUSSION

In his amended complaint, Plaintiff asserts claims for violation of his rights under the United States Constitution and the Connecticut Constitution, and a claim of state common law negligent infliction of emotional distress.[8]  The Court incorporates its analysis in its original Initial Review Order concerning Plaintiff's state constitutional claim and claim for negligent infliction of emotional distress, as neither Plaintiff's allegations as to these issues nor the governing legal standards have changed.  *See* ECF No. 10 at 24–26.  The Court declines to exercise supplemental jurisdiction over the state law constitutional claim and the negligent infliction of emotional distress claim, and thus, they cannot proceed.

Additionally, Plaintiff's amended complaint does not adequately revive the following claims previously dismissed on initial review:  First Amendment retaliation, deprivation of court access, inadequate grievance review, and deprivation of a right to an investigation.  *See* ECF No. 10 at 20–25.  Accordingly, the Court does not address these claims in this Order, as they remain dismissed.

Likewise, the Court's prior Initial Review Order explained that a plaintiff cannot obtain damages from Defendants in their official capacities.  *See* ECF No. 10 at 9 (applying *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  Despite this, Plaintiff again seeks damages and does not specify that he requests damages from Defendants only in their individual capacities.  Any claims

---

[8] The Court also considers whether Plaintiff raises plausible state law claims of common law assault and battery and recklessness.

for damages from Defendants in their official capacities were dismissed in the prior Initial Review Order and are not revived by their inclusion in the amended complaint.  Thus, the Court considers the damages claims only to the extent they seek damages from Defendants in their individual capacities.

Nor can Plaintiff proceed for injunctive or declaratory relief against a Defendant in his or her official capacity, unless he alleges an ongoing constitutional violation.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  As the Court previously explained on prior initial review, Plaintiff is no longer housed at Walker and his requests for official capacity relief against any Defendants who are employed at Walker are moot.  *See* ECF No. 10 at 9 (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility)).  Nor has Plaintiff otherwise alleged that he is proceeding on a claim of ongoing or continuing constitutional violation.  Accordingly, Plaintiff's official capacity claims for injunctive relief are dismissed.

The Court turns next to consideration of whether Plaintiff has alleged any plausible claim for damages against the remaining Defendants in their individual capacities.

A.  Fourteenth Amendment Excessive Force

As previously explained on prior initial review, Plaintiff's claims of excessive force are governed by the Fourteenth Amendment.  ECF No. 10 at 28.  The legal standards set forth in the original Initial Review Order are expressly incorporated herein.

1.  *Assault During Escort*

Plaintiff's allegations are sufficient to suggest that Officers Ericson and Swol applied a misuse of force during his escort and that Lieutenant Scagliarni, Officer Bauza, and RN Anglade

failed to intervene to prevent the misuse of force at the time.  Accordingly, the Court will permit Plaintiff to proceed on his Fourteenth Amendment misuse of physical force claims against Lieutenant Scagliarni, Officers Ericson, Swol, and Bauza, and RN Anglade.

### 2.  Chemical Agent Exposure

Plaintiff has plausibly alleged that Lieutenant Scagliarni subjected him to excessive amounts of chemical agent and that RN Anglade, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, and Swol had the opportunity but failed to prevent the misuse of force.  Thus, Plaintiff may proceed on his Fourteenth Amendment excessive force claims based on deployment of the chemical agent against Lieutenant Scagliarni, Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, and Swol, and RN Anglade for further development of the record.

### 3.  Restraints

The use of restraints does not violate the Constitution unless it lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984).  Plaintiff's allegations suggest that Defendants applied a harsh use of restraints that was plausibly disproportionate to the situation. The Court will permit Plaintiff to proceed on a Fourteenth Amendment violation based on the application of harsh restraints (or failure to prevent the use of the harsh restraints) against Lieutenants Scagliarni and Scott, RN Anglade, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, and Gerish in their individual capacities for further development of the record.

B.  Fourteenth Amendment Deliberate Indifference

Plaintiff asserts several claims for deliberate indifference to his risk of harm and/or health and medical needs.  Again, the Due Process Clause of the Fourteenth Amendment governs claims of deliberate indifference brought by pretrial detainees.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019) (pretrial detainee deliberate indifference claims fall under the Fourteenth Amendment).  The legal standards governing these claims set forth in the original Initial Review Order are expressly incorporated herein.

*1.  Use of Restraints*

A painful or harmful period of restraint can rise to the level of an objectively serious condition of confinement.  *Shand v. Rodriguez*, No. 3:20-cv-1268 (SVN), 2021 WL 5988629, at *6 (D. Conn. Dec. 17, 2021).  At this early stage in the matter, Plaintiff's allegations suffice to support Fourteenth Amendment claims of deliberate indifference to a risk of harm to Plaintiff's health and/or medical needs against Lieutenants Scagliarni and Scott, RNs Anglade and Asmah, LPN McDonald, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, and Gerish for further development of the record.

*2.  Medical Needs*

For purposes of initial review, the Court considers Plaintiff to have plausibly alleged that he has serious medical needs related to his chemical agent exposure, shoulder injury, handcuffing injuries and ligament damage, and head trauma.

*3.  Chemical Agent Exposure*

For purposes of initial review, Plaintiff's allegations suffice to suggest Fourteenth Amendment indifference to Plaintiff's risk of harm from excessive chemical agent exposure against Lieutenant Scagliarni, RN Anglade, and Officers Konopelski, Daniele, Harvey, Ericson,

14

Bilobeau, Vazquez, Stone, and Swol in their individual capacities.

### 4. Decontamination

Plaintiff alleges that Does 1–4, RNs Asmah and Burns, LPN McDonald, Drs. Pillai and Scott-Mailloux, and Lieutenant Scott all acted to deprive Plaintiff of his need for decontamination that resulted in injury to his eyes. He claims that Officers Fuller, Vasquez, and Gerish were aware of, but failed to report, his need for decontamination to medical staff. For initial review purposes, the Court will permit Plaintiff to proceed on his claims of Fourteenth Amendment indifference to his need for decontamination from the chemical agent against Does 1–4, RNs Asmah and Burns, LPN McDonald, Drs. Pillai and Scott-Mailloux, Lieutenant Scott, and Officers Fuller, Vasquez, and Gerish in their individual capacities.[9]

### 5. Failure to Provide Medical Treatment

Plaintiff alleges that RNs Asmah and Burns, LPN McDonald, and Does 1–3 refused to provide him with medical treatment for his handcuff injuries and hand numbness, head trauma, shoulder pain, and burning eyes. He claims further that Dr. Scott-Mailloux failed to provide him treatment for his wrist injuries and head trauma; Dr. Pillai failed to examine him properly, provide a neurological examination, or order him X-rays; and LPN Bonetti removed his stitches but refused to examine him.

At this initial stage in the matter, Plaintiff's allegations suggest that these Defendants were aware of his medical needs but failed to provide treatment. Accordingly, Plaintiff may proceed on his Fourteenth Amendment medical indifference claims against Does 1–3, RNs Asmah and Burns,

---

[9] Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene, *see Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013), but, in general, an inmate's lack of showering for three days is not sufficient to suggest a deprivation of constitutional dimension. *See Rogers v. Faucher*, No. 3:18-cv-01809 (JCH), 2019 WL 1083690, at *5 (D. Conn. Mar. 7, 2019) (six-day deprivation of shower use did not constitute sufficiently serious deprivation of a human need). Accordingly, the Court permits Plaintiff to proceed on his shower deprivation claim under a theory of medical indifference to his need for decontamination.

LPNs McDonald and Bonetti, Dr. Scott-Mailloux, and Dr. Pillai in their individual capacities.

      6.  *Treatment Delay*

Plaintiff alleges that HSAR Coordinator Brennan, RN Hite, and Dr. Rader all acted to delay his medical treatment.

He claims that HSAR Coordinator Brennan delayed his medical treatment for his serious conditions by continually rejecting his grievances and wrongfully finding mistakes to substantiate the rejections. His allegations suggest that HSAR Coordinator Brennan wrongfully identified mistakes so that she could reject his grievances about his medical care. At this early stage in the matter, the Court will permit Plaintiff to proceed on a Fourteenth Amendment deliberate indifference claim against Brennan in her individual capacity for further development of the record.[10]

Plaintiff claims that RN Hite did not provide him with medical treatment until her supervisor arrived at the appointment on December 31, 2020. Plaintiff also indicates that she took no action after she previously received four inmate requests from him about his serious medical needs and that later X-ray showed an injury to a ligament in his left hand. ECF No. 14 ¶¶ 74, 74.1, 75–76. As these allegations suggest that Plaintiff may have suffered any objectively serious harm due to a delay in medical treatment caused by RN Hite, the Court will permit him to proceed

---

[10] Plaintiff claims HSAR Coordinator Brennan "colluded" to cover up both her and other staff medical indifference and malpractice. ECF No. 14 ¶ 102. For a conspiracy claim under section 1983, Plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). Here, Plaintiff fails to allege a factual basis to support a meeting of the minds or even a plausible inference that HSAR Coordinator Brennan conspired with anyone to violate his constitutional rights. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (for Section 1983 conspiracy claim, conspiracy allegations can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy"); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient."). Accordingly, any claim of conspiracy under section 1983 must be dismissed as not plausible.

against RN Hite for further development of the record. *See Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir. 2003) (noting where plaintiff alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone").

Plaintiff alleges that Dr. Rader overlooked his prior X-rays and ordered an MRI on the wrong part of Plaintiff's hand, but he does not allege that Dr. Rader's mistake caused any serious harm. Nor does he allege facts to suggest that Dr. Rader acted with a state of mind more than mere negligence when he ordered the MRI. *See Darnell*, 849 F.3d at 36 (explaining mere negligence is not sufficient for Fourteenth Amendment violation). Plaintiff's remaining allegations about Dr. Rader merely suggest that he disagrees with the doctor's medical judgments concerning the migraine medication, his ligament damage, and his need for an order to prohibit rear handcuffing. An inmate's disagreement with his medical provider's medical treatment decisions is not sufficient to state a medical deprivation of constitutional dimension. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Gonzalez v. Sarreck*, No. 08 Civ. 3661, 2011 WL 5051341, at *18 (S.D.N.Y. Oct. 24, 2011) (noting "disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under [section] 1983" (cleaned up)). In most instances, an inmate's challenge to a provider's medical judgment will raise an issue of negligence or medical malpractice that is insufficient to amount to a constitutional claim. *See, e.g.*, *Boyd v. Deasis*, 524 F. Supp. 3d 128, 144 (W.D.N.Y. 2021) (holding that a pretrial detainee's disagreement with medical treatment was insufficient to support a constitutional deliberate indifference claim). "In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as evident when treatment recommendations are not derived from "sound medical

judgment," but rather from "ulterior motives." *Chance*, 143 F.3d at 703–04 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives). Although Plaintiff alleges that his migraine prescription was "cheap," he has put forward no nonconclusory allegations suggesting that Dr. Rader acted on the basis of ulterior motives rather than sound medical judgment.

Accordingly, Plaintiff's Fourteenth Amendment medical indifference claims against Dr. Rader are not plausible and must be dismissed.

### 7. *Correctional Officer Interference with Plaintiff's Medical Treatment*

Correctional staff may act with deliberate indifference if they intentionally deny or delay access to medical care or intentionally interfere with an inmate's prescribed treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see Roundtree v. City of New York*, No. 15 Civ. 8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) ("[A] plaintiff must prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment.").

Plaintiff indicates that he never received medical care as promised when he met with Counselor Supervisor Dow and Officer Melendez, and that they failed to report his injuries to medical staff. For purposes of initial review, the Court will permit Plaintiff to proceed on his Fourteenth Amendment claim of medical indifference against Dow and Melendez for failing to bring his injuries to the attention of medical staff.

Plaintiff alleges that Defendants Bilobeau, Vazquez, and Hall failed to report the seriousness of his injuries to medical staff at UCONN Hospital. He claims that even a layperson could tell that his injuries were serious. In light of these facts, it is not clear how Officers Bilobeau,

Vazquez, or Hall acted with indifference to Plaintiff's medical needs when they took him to a hospital where medical staff could assess his obviously serious injuries. There is no allegation that they delayed in transporting him to the hospital. Nor is there any indication that these Defendants could have ensured that Plaintiff was provided with more extensive medical treatment at DOC or the hospital. *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *4 (D. Conn. Mar. 1, 2024) (dismissing Fourteenth Amendment claim where plaintiff failed to alleged defendant had the ability to provide him with a CPAP machine, but nevertheless acted intentionally to deprive him of an immediate CPAP machine, or acted recklessly to interfere with his provision of a more immediate the CPAP machine); *Warwick v. Doe*, No. 3:20-CV-277 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to, at most, negligence). At most, Plaintiff's present allegations suggest that Defendants Bilobeau, Vazquez, and Hall may have acted negligently, which is not sufficient to support a plausible Fourteenth Amendment violation. *Darnell*, 849 F.3d at 36. Plaintiff therefore may not pursue a deliberate indifference claim related to interference with medical treatment against Officers Bilobeau, Vazquez, and Hall.

Plaintiff alleges that Lieutenant Scott and Officers Fuller, Gerish, and Vazquez were aware of his pain and injuries from the excessive force and his shoulder condition, but failed to advise medical staff of his medical needs. For purposes of initial review, Plaintiff has adequately stated a Fourteenth Amendment claim for medical indifference against Lieutenant Scott and Officers Fuller, Gerish, and Vazquez.

Finally, Plaintiff claims that Captain Danek failed to call for medical assistance after Plaintiff reported his injuries. For purposes of initial review, the Court concludes that Plaintiff has

sufficiently alleged that Captain Danek acted with indifference to his serious medical needs.  Thus, Plaintiff may proceed against Captain Danek in his individual capacity.

### 8.  Failure to Properly Report Medical Injuries

Plaintiff asserts that Does 1–3 and RNs Hite, Burns, and Asmah, LPN McDonald, and Drs. Pillai and Rader failed to properly report his injuries.  The legal standards governing these claims set forth in the original Initial Review Order are expressly incorporated herein.

As Plaintiff's allegations suggest that RNs Asmah and Burns, LPN McDonald, Does 1, 2, and 3, and Dr. Pillai acted with indifference to his need for medical treatment when they failed to document his visible injuries, the Court will permit him to proceed with his Fourteenth Amendment medical indifference claim against these Defendants.

However, Plaintiff's allegations about RN Hite and Dr. Rader minimizing or underreporting his injuries do not suggest that these Defendants acted intentionally or recklessly to deprive Plaintiff of necessary medical treatment by falsely reporting or underreporting his visible injuries.  Thus, the Court will not permit Plaintiff to proceed with Fourteenth Amendment claims arising solely from falsely or underreporting his injuries in the record against these Defendants.[11]

### C.  Fourteenth Amendment Unauthorized Medical Treatment

Plaintiff alleges that RN Anglade administered medication ordered by Dr. Zaidi without his consent, and that Dr. Scott-Mailloux sedated him without consent and then provided medical treatment to close his laceration.  The legal standards governing these claims set forth in the original Initial Review Order are expressly incorporated herein.

Plaintiff claims in conclusory terms that Defendants' conduct was conscience-shocking.

---

[11] Plaintiff also alleges that Counselor Supervisor Dow provided false information about his injuries in non-medical reports.  However, these allegations fail to support a Fourteenth Amendment *medical* indifference claim.

The allegations about Defendants providing him with medication and medical treatment under alleged circumstances do not suggest conscience-shocking, arbitrary, or oppressive conduct. Accordingly, Plaintiff has not plausibly alleged a Fourteenth Amendment substantive due process violation for this alleged conduct by Defendants RN Anglade and Drs. Zaidi and Scott-Mailloux.

      D.  <u>Fourth Amendment Violation</u>

Plaintiff's amended complaint raises Fourth Amendment concerns related to a strip search. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Inmates "retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).

Generally, strip searches have been upheld as reasonable as long as they are related to legitimate penological goals. *See, e.g.*, *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006).  However, a strip search is unreasonable "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Id.* (concluding that the plaintiff sufficiently alleged that the strip search was unreasonable because "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate).  To determine whether an isolated search infringed on an inmate's right of bodily privacy and was thus unreasonable, a court must consider four factors: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 58 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Plaintiff's allegations do not suggest any impropriety with the strip search itself; rather, he protests that the officers present during the search did not allow him to be decontaminated and did

not acknowledge the pain in his wrists and shoulder. As Plaintiff does not appear to challenge the search itself, he may not proceed with a Fourth Amendment claim.

    E.  Claims Against High-Ranking DOC Officials

Plaintiff seeks to hold high-ranking officials—Commissioner Quiros, Warden Barone, Deputy Wardens Doran, Maldonado, and Ogando, Director of Security Santiago, and District Administrator Rodriguez—liable for violation of his constitutional rights.

Plaintiff complains that these supervisory officials failed to respond to his grievances or correspondence. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). "A supervisor's mere knowledge . . . is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616–17. Likewise, a supervisor's failure to provide redress based on notice after an alleged constitutional violation occurred does not state a cognizable claim for section 1983 liability. *See Parker v. New York*, No. 22-CV-3170 (GRB) (AYS), 2022 WL 2441215, at *4 (E.D.N.Y. July 1, 2022) (supervisor's failure to provide remedy for violation complained of in grievance was not sufficient to establish supervisor's liability); *Andrews v. Gates*, No. 3:17-CV-1233 (SRU), 2019 WL 2930063, at *8 (D. Conn. July 8, 2019) (concluding supervisor's alleged notice after the fact of an isolated incident was insufficient to support a constitutional claim). And "a defendant's mere receipt of a letter or

grievance, without personally investigating or acting thereon, is insufficient to establish personal

involvement." *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (citation

omitted). Accordingly, Plaintiff cannot establish a constitutional claim of indifference to health

on the basis of high-ranking Defendants' failure to respond to his letter or grievance.

Nor does Plaintiff's amended complaint allege facts to reflect that any of these supervisory

Defendants had direct personal involvement with the alleged deliberate indifference to Plaintiff's

health. No alleged facts suggest that Commissioner Quiros, Warden Barone, Deputy Wardens

Doran, Maldonado and Ogando, Director of Security Santiago, and District Administrator

Rodriguez took action to interfere with Plaintiff's medical treatment or to put Plaintiff at risk of

harm to his health.

Plaintiff asserts that the high-ranking officials should be liable for his injuries because they

failed to institute policies to prohibit rear-cuffing for inmates with shoulder injuries or permitted

policies or customs that resulted in Plaintiff's injuries due to being subjected to misuse of force

and a harmful exposure to the chemical agent. A supervisor can face liability by "creat[ing] a

policy or custom under which unconstitutional practices occurred, or allow[ing] the continuance

of such a policy or custom." *Stone #1 v. Annucci*, No. 20 Civ. 1326 (RA), 2021 WL 4463033, at

*8–9 (S.D.N.Y. Sept. 28, 2021). That is because "where a plaintiff can establish that a senior

official promulgated an unconstitutional policy with a culpable mental state . . . such official could

be deemed to be personally involved in a constitutional violation." *Id.* at *8.

However, Plaintiff has not alleged facts to suggest that any of these supervisory Defendants

acted with the requisite state of mind for a Fourteenth Amendment indifference claim. No facts

indicate they failed to act despite being aware that DOC's policies or customs regarding the use of

force were not sufficient to protect Plaintiff and other inmates from unconstitutional excessive

force or that more specific policies regarding circumstances to prohibit rear-cuffing needed to be implemented.  Accordingly, the Court must dismiss the claims against Commissioner Quiros, Warden Barone, Deputy Wardens Doran, Maldonado, and Ogando, Director of Security Santiago, and District Administrator Rodriguez as not plausible.

F.  Fourteenth Amendment Procedural Due Process

Plaintiff's amended complaint suggests procedural due process violations in connection with disciplinary report proceedings.  ECF No. 14 ¶ 70.1.

A claim of a violation of procedural due process "proceeds in two steps:  We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).  The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).  By contrast, for a disciplinary proceeding, an inmate is entitled to advanced written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974).

Here, Plaintiff's allegations challenge his disciplinary proceeding on the basis of Officer Melendez's alleged false promises of medical attention if Plaintiff signed the disciplinary report and alleged coercion relating to Plaintiff's signing the disciplinary report despite his inability to

read it due to his eye injuries.[12]  This conduct raises questions about whether the process was constitutionally sufficient.  Indeed, similar allegations have survived the initial review process before.  *See Lexis v. Bellemare*, No. 3:18-CV-1403 (JAM), 2019 WL 1596571, at *2, *7 (D. Conn. Apr. 15, 2019) (permitting procedural due process claim to proceed where correctional staff told inmate that if he did not admit to the charge in the report, he would still be sent to Northern and would also receive sanctions of 90-day loss of phone, recreation, and commissary).

Accordingly, Plaintiff may proceed on a Fourteenth Amendment procedural due process claim against Officer Melendez for further development of the record.

G.  <u>State Law Claims</u>

Although not specifically pleaded by Plaintiff, the Court construes Plaintiff's allegations to support the following plausible state law claims that fall within the Court's supplemental jurisdiction.

### 1.  *Assault and Battery*

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another."  *German v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011).  "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)).

For purposes of initial review, the Court will permit Plaintiff to proceed on his claims of state law assault and battery against Lieutenants Scagliarni and Scott, RN Anglade, and Officers

---

[12] No allegations address the administrative decision to place Plaintiff in segregation or his segregation conditions.

Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, and Gerish for further development of the record.

    2. *Recklessness*

Connecticut General Statute § 4-165 provides:  "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002).

As Plaintiff has plausibly pleaded Fourteenth Amendment deliberate indifference claims that necessarily require a showing of at least reckless conduct, the Court will permit him to assert similar state law recklessness claims for further development of the record.  Conn. Gen. Stat. § 4-165(a); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (immunity does not apply to "reckless" conduct).  Thus, Plaintiff may proceed with recklessness claims against Does 1–4, Lieutenants Scagliarni and Scott, RNs Anglade, Burns Asmah, and Hite, LPNs Bonetti and McDonald, Drs. Scott-Mailloux and Pillai, Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, Gerish, and Melendez, Captain Danek, HSAR Coordinator Brennan, and Counselor Supervisor Dow.

**ORDERS**

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims based on:

1. Fourteenth Amendment excessive force against Lieutenants Scagliarni and Scott, RN Anglade, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez,

26

Stone, Swol, Fuller, and Gerish;

2. Fourteenth Amendment deliberate indifference to Plaintiff's risk of harm from the use of harsh restraints against Lieutenants Scagliarni and Scott, RNs Anglade and Asmah, LPN McDonald, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, and Gerish;

3. Fourteenth Amendment deliberate indifference to Plaintiff's harm from effects of chemical agent exposure against Lieutenant Scagliarni, RN Anglade, and Officers Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, and Swol;

4. Fourteenth Amendment deliberate indifference to Plaintiff's need for decontamination from the chemical agent against Does 1–4, Lieutenant Scott, Officers Fuller, Gerish, and Vazquez, RNs Asmah and Burns, LPN McDonald, and Drs. Scott-Mailloux and Pillai;

5. Fourteenth Amendment deliberate indifference to Plaintiff's medical needs against Does 1–3, Captain Danek, Lieutenant Scott, Officers Fuller, Gerish, Vazquez, and Melendez, RNs Asmah, Burns, and Hite, LPNs McDonald and Bonetti, Drs. Scott-Mailloux and Pillai, HSAR Coordinator Brennan, and Counselor Supervisor Dow;

6. Fourteenth Amendment procedural due process violation against Officer Melendez;

7. State common law assault and battery against Lieutenants Scagliarni and Scott, RN Anglade, and Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, and Gerish; and

8. Common law recklessness against Does 1–4, Lieutenants Scagliarni and Scott, RNs Anglade, Burns, Asmah, and Hite, LPNs McDonald and Bonetti, Drs. Scott-Mailloux and Pillai, Officers Bauza, Konopelski, Daniele, Harvey, Ericson, Bilobeau, Vazquez, Stone, Swol, Fuller, Gerish, and Melendez, Captain Danek, HSAR Coordinator Brennan, and

Counselor Supervisor Dow.

The Court DISMISSES all official capacity claims and the state law negligent infliction of emotional distress claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state constitutional claim pursuant to 28 U.S.C. § 1367(c). The Court dismisses all claims against Officer Hall, Doe 5, Dr. Rader, Dr. Zaidi, Warden Barone, Deputy Warden Doran, Deputy Warden Maldonado, Deputy Warden Ogando, Director of Security Santiago, District Administrator Rodriguez, and Commissioner Quiros.

### Limited Appointment of Counsel

Plaintiff's amended complaint is lengthy, repetitive, and difficult to follow.  Accordingly, it arguably does not satisfy Federal Rule of Civil Procedure 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to relief" and for "each allegation" to be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(1)–(2), (d)(1).  Rule 8 of Federal Rules of Civil Procedure requires that a statement for relief be plain "because the principal function of pleadings under the Federal Rules of Civil Procedure is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Thus, the Court concludes that it is in the interest of justice to appoint *pro bono* counsel for the limited purpose of redrafting a typed version of Plaintiff's amended complaint to conform with this Initial Review Order and Rule 8.  *See* D. Conn. L. Civ. R. 83.10(c)(2).  Paragraph numbering must remain the same in the revised version of the amended complaint, for ease of reference.  The appointed counsel may file a motion to withdraw after having completed the limited purpose of this appointment.  After the resubmitted amended complaint is filed by appointed counsel, the Court will commence the process to effect service on Defendants as described above.

28

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 27th day of November, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE