UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS H. IBBISON, *Plaintiff*, v. SCAGLIARNI, et al. *Defendants*. | : | No. 3:23-cv-1379-SDV |

# RULING ON DISCOVERY MOTIONS

## A. Plaintiff's Motion to Compel (ECF 225)

Pending is Plaintiff's Motion to Compel asserting that Defendants' responses to written discovery are deficient. ECF 225. Plaintiff has litigated this case with a broad-brush approach, initially naming 44 defendants, 29 of which remain in the case. He also served hundreds of written discovery requests.

Upon receiving the motion to compel, the Court noted that "[t]he papers are not specific enough for the Court to understand what rulings it is being asked to make" and instructed Plaintiff to "file a Notice of alleged deficiencies at issue, specifically listing the (i) date of the request, (ii) type of request (interrogatory, request for production, or request for admission), (iii) number of the request, (iv) respondent to whom the request was directed, (v) date of any response and supplemental response, and (vi) how the response is deficient." ECF 227. In response, however, Plaintiff did not focus his requests for relief but, instead, asked the Court to adjudicate each of the approximately 1500 discovery requests he has served on the 29 Defendants. *See* ECF 229 at 2–4. That includes:

1. RFPs[1] dated 11/17/25. *See* ECF 255-3 (28 RFPs); ECF 261-1 at 2–15 (Defendants' revised responses).

2. "Requests" dated 12/8/25. This was not a set of formal RFPs but, rather, a letter dated 12/8/25 with 9 demands for Defendants to explain their discovery compliance efforts along with 3 requests for additional documents. *See* ECF 255-6.

3. ROGs and RFAs dated 11/25/25. *See* ECF 255-4 at 3 (11 ROGs and 13 RFAs for each of the 29 Defendants = 696 total). Defendants' answers are at ECF 255-4 at 6–296, with some revised answers in ECF 261-1.

4. ROGs and RFAs dated 1/26/26. *See* ECF 255-5 (approx. 14 ROGs and 13 RFAs served on each of the 29 Defendants = approx. 783 total). Defendants' answers are at ECF 255-5.

Additionally,

5. Plaintiff seeks removal of redactions on the AD 6.5 policies regarding chemical agents and decontamination produced to him by Defendants. *See* ECF 229 at 12–13.

The Court has already conducted three Zoom conferences on the Motion to Compel, ECF 248, 258, and 262, during which it considered 11/17/25 RFPs and issued rulings with explanations of the guiding principles of relevance and proportionality. Those rulings are memorialized below. For the sake of efficiency and economy, the Court has taken the other disputed requests on the papers. Each such request has been analyzed with reference to the principles of relevance and proportionality, as explained in Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). To the extent that Plaintiff's Motion to Compel is granted in part as to a particular request, the bold text specifies what Defendants must do to complete compliance.

---

[1] Requests for production are herein denoted as "RFPs," interrogatories as "ROGs," and requests for admission as "RFAs."

**1. RFPs dated 11/17/25 (ECF 255-3; ECF 261-1)**

RFP 1 is overbroad as written. The only relevant responsive information would be emails addressing the 12/6/20 incident. Defendants represent that none exist. DENIED.

RFP 2 is overbroad and seeks privileged communications. DENIED.

RFP 3 through 6. Defendants represent that no responsive documents exist. DENIED.

RFP 7. Defendants represent that none of them has been disciplined on other occasions for use of force or medical indifference, so there are no responsive documents. DENIED.

RFP 8. The only relevant responsive information in the personnel files would be prior investigations or discipline for use of force, including chemical agents. Plaintiff contends that relevant documents might be called "counseling" or "retraining" rather than "discipline." Defendant has already produced the only such document, which was a counseling letter to Defendant Scagliarni. DENIED.

RFP 9. GRANTED IN PART. **Defendants shall produce a list stating dates each defendant attended training on the use of force and chemical agent/decontaminations policies for the 5 years prior to 12/6/20**.

RFP 10–11. The requested lawsuits and grievances are irrelevant, overbroad, and disproportionately burdensome insofar as they are unproven allegations of incidents involving nonparties and would require a review of all grievances from the facility to find any that pertain to the Defendants under similar circumstances. DENIED.

RFP 12. Defendants have produced AD 6.9 re: retention of video footage. Defendants have also produced AD 6.5 re: use of force, but Plaintiff contends that attachments were missing or unduly redacted. **DECISION RESERVED. Defendants shall submit (via *ex parte* email to Judge Vatti's law clerk) two versions of the AD 6.5 policy with all attachments: one version showing what was produced to Plaintiff with redactions, and one full unredacted copy for comparison.**

RFP 13–14. The request for "internal review files" is vague. Defendants produced a redacted copy of the investigation report, and Plaintiff was permitted to inspect the unredacted report. DENIED.

RFP 15. Defendants represent that no retraining policies were updated in response to the incident. DENIED.

RFP 16–20. These requests concern the quality of delivery of Plaintiff's legal mail. This discovery about discovery has marginal relevance, at best, and is disproportionate to the needs of the case. DENIED.

RFP 21. Defendants' response indicates that they have produced the incident report with the relevant information regarding decontamination. DENIED.

RFP 22. The request for "email directive logs" is vague an appears to seek privileged information. Defendants also represent that no such documents exist. DENIED.

RFP 23. Defendants' response states that the relevant video retention records have been produced. DENIED.

RFP 24. Audit logs showing who accessed Plaintiff's records is neither relevant nor proportionate, and Defendants represent that no such documents exist. DENIED.

RFP 25. The request for chain of custody logs regarding video evidence is duplicative of RFP 23. DENIED.

RFP 26. Defendants' response states that there are no responsive memos telling staff not to discuss the incident in writing. DENIED.

RFP 27. The request for "Chain of command of all e-mails produced" is incomprehensible. To the extent that the request meant to say "custody" in place of "command," the request is still incomprehensible. Defendants' response states that no such document exists. DENIED.

RFP 28. This is more an instruction than request, asserting that Defendants should not redact emails they produce in discovery. Any such contention would have to be addressed on a case-by-case basis. DENIED.

**2. "Requests" dated 12/8/25 (ECF 255-6 at 3)**

Turning to Plaintiff's letter dated 12/8/25, Requests 1 to 9 and "RFPs" 1 to 3 are DENIED. *See* ECF 255-6 at 3. They mostly seek documentation and explanation of Defendants' due diligence in responding to discovery requests, which is not warranted. Plaintiff also alleges that initial disclosures are incomplete, stating "only 95 pages received – not 3560." *Id.* However, the initial disclosures explain that Bates 0001 to 3400 are Plaintiff's DOC medical records from October 1, 2019 to September 8, 2025, and that they were delivered to Plaintiff on May 1, 2024. *Id.* at 3. The disclosures then attach Bates 3401 to 3480, which are DOC records concerning the underlying incident, and Bates 3481 to 3496, which are UCONN medical records.

ECF 255-1 at 5–100. Plaintiff's Motion to Compel and Notice of Disputes do not dispute that these materials were produced.

**3. ROGs and RFAs dated 11/25/25 (ECF 255-4; ECF 261-1)**

The Court previously ordered, in the interest of efficiency, that the 29 Defendants could "serve their collective responses or objections" to the ROGs and RFAs dated 11/25/25, "mean[ing] that the defendants, as a group, will serve one objection or verified answer to each request propounded." ECF 166, 185. It appears that Defendants did not avail themselves of this accommodation. *See* ECF 255-4 at 6–297; ECF 261-1 at 2–54. In reviewing the ROGs and RFAs themselves, ECF 255-4 at 3–4, the Court finds that some of them seek information that is irrelevant and/or not proportional to the needs of the case. Accordingly, ROGs 4–5 and RFAs 1–7 are DENIED. ROGs 1–3 merely seek identification, so presumably no relief is needed, and these are DENIED AS MOOT. The rest of the ROGs and RFAs pertain to training and discipline, which has already been addressed in the Court's ruling above regarding RFPs 7–11 in Plaintiff's first set. Accordingly, no further relief is warranted as to ROGs 6–11 and RFAs 8–13, and they are DENIED AS MOOT.

**4. ROGs and RFAs dated 1/26/26 (ECF 255-5)**

Plaintiff's second set of ROGs and RFAs generally seek relevant information and, in most instances, are proportional to the needs of the case. ECF 255-5. The only specific deficiency alleged by Plaintiff (*see* ECF 229) is that CO Swol did not provide answers. The Court notes that Defendants' filing at ECF 255-5 includes the ROGs and RFAs served on Defendant Swol's but does not include his answers. **Defendants' counsel shall investigate whether Defendant Swol's served answers to Plaintiff's ROGs and RFAs dated 1/26/26, *see* ECF 255-5 at 42–43, and shall serve a copy on Plaintiff.**

Otherwise, the alleged deficiencies are non-specific. As to the ROGs, Plaintiff asserts: "The deficiencies would require more than a 100+ page report to list." ECF 229 at 2. To the extent that Plaintiff is implying that the burden of reviewing Defendants' discovery compliance should be shifted to the Court, that is not a reasonable expectation. Meanwhile, the Court's generalized review of Defendants' answers to the 1/26/26 ROGs did not reveal any obvious deficiencies. Notably, even where Defendants stated objections to the ROGs, they provided answers nonetheless. And to the extent that Plaintiff is dissatisfied with the level of detail provided, Defendants' answers frequently state that they simply do not remember the underlying incident with the level of granularity that Plaintiff requests. For example, in ROG 16 to Defendant Bauza, Plaintiff asked: "State in detail everything you observed when handcuffs were placed on Plaintiff on 12/6/20 around 4:00 PM at Walker CI, prior to escort." ECF 255-5 at 72. Defendant Bauza answered:

> This incident happened in 2020, and since, I have been involved many other incidents. Therefore, it is not reasonable for me to recall the entire incident verbatim. I recall IM Ibbison being noncompliant and aggressive. Prior to the incident escalating, I saw him sniffing a white substance while in his cell. Verbal command was given, which he ignored and upon finishing my round I communicated to supervisor.

*Id.* at 74. That answer and others like it satisfy the Defendant's response obligation under Rule 33.

Turning to the RFAs, Plaintiff asserts: "Each defendant besides 4 all evaded/denied to answer 4-7 questions on average, 3 defendants did not answer on date. #4, 5, 6, 8, 9, 12, 13 were most commonly evaded." ECF 229 at 4. Again, the Court will not take on the burden of reviewing discovery compliance for Plaintiff or develop arguments on his behalf. And again, in a generalized review of Defendants' answers to the 1/26/26 RFAs, no egregious deficiencies stood out to the Court. Notably, the purpose of RFAs is to establish basic undisputed facts so

trial time can be better used to develop evidence that requires deeper explanation. *See Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-cv-858 (NGG) (PK), 2020 WL 1698593, at *2 (E.D.N.Y. Apr. 8, 2020).[2] RFAs are not a mechanism to trap witnesses or usurp the factfinder's responsibility to weigh and evaluate testimony. *Id.* Accordingly, to the extent that Plaintiff disbelieves Defendants' denials, that is an issue of credibility to be addressed at trial, not a question of discovery compliance. Lastly, in regards to RFAs that Defendants neither admitted nor denied, the reason for the Defendant's inability to answer is stated in his or her response. For example, the answers sometimes indicate that a particular Defendant does not recall the events to the level of detail asserted in the RFA. Such a response satisfies the relevant discovery rule. *See*

---

[2] Magistrate Judge Kuo helpfully explained that requests for admission

> "'presuppose that the party proceeding under Rule 36 knows the facts or has the document and merely wishes its opponent to concede their genuineness.'" *Pasternak v. Dow Kim*, No. 10-cv-5045 (LTS) (JLC), 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (quoting 8B, Wright, Miller & Marcus, Federal Practice and Procedure, § 2253 at 324) (brackets omitted).
>
> Requests for admission "are extremely useful tools, particularly at the conclusion of discovery, because 'their sole purpose is to streamline the presentation of evidence at trial.' " *Pasternak*, 2011 WL 4552389, at *5 (quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)). They "eliminat[e] the necessity of proving facts that are not in substantial dispute," thereby reducing the costs of litigation. *Pasternak*, 2011 WL 4552389, at *5.
>
> Requests for admission are not intended to usurp the factfinder's ability to make credibility determinations at trial. While requests for admission serve an important function in narrowing the scope of issues to be litigated, they should not be construed "to subsume the judicial function contained in Rule 52(a) to weigh and evaluate testimony." *Kendrick v. Sullivan*, No. 83-cv-3175 (CRR), 1992 WL 119125, at *3 (D.D.C. May 15, 1992).

*Ohio Casualty Ins. Co.*, 2020 WL 1698593, at *2.

Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.").

**5. Redactions of AD 6.5 attachments**

Plaintiff's allegation of unnecessary redactions in the produced copies of AD 6.5 is addressed in the Court's order above regarding RFP 12. Per that order, the Court will conduct an *in camera* review to determine whether the redactions are justified for safety and security reasons.

**B. Plaintiff's Motions for Sanctions (ECF 244, ECF 246)**

Also pending are Plaintiff's Motions for Discovery Sanctions seeking Rule 37 sanctions for discovery delays and missed deadlines including, among other things, precluding Defendants from moving for summary judgment. ECF 244, 246. Those motions are DENIED. The Court has spent an inordinate amount of time on discovery issues in this case, including eight discovery conferences over the last 12 months. Although Plaintiff levies accusations of bad faith and lack of diligence against the Defendants' counsel, both parties have contributed to the amount of time discovery has consumed in this matter. On the one hand, the Court is aware that Defendant's counsel was previously chastised by Judge Nagala for missing case management deadlines and failing to respond to related orders. *See* Omnibus Ruling and Order, ECF 160 at 1–6. Since then, Defendants have not always been efficient in discovery compliance, and their response times have often been longer than ideal. On the other hand, the delays in Defendants' responses and unproductive meet-and-confers are also attributable in part to Plaintiff's selection of a very large, indiscriminate group of defendants and the sheer volume of his discovery requests. Furthermore, since the undersigned began supervising discovery twelve months ago, not only have the two Assistant Attorneys General defending this case been confronted with the discovery deluge described above—including approximately 1500 discovery requests, a number that is

wholly disproportionate to the needs of this case—but each attorney has also encountered an unexpected period of medical leave.

The Court has observed improvement during its supervision of discovery. Plaintiff has become more responsive to the Court's concerns and has attempted to be more pragmatic and focused in his approach. Meanwhile, Defendants have worked to respond to the deluge of discovery requests with adequate attention and diligence. With the case now progressing towards the end of discovery, sanctions are not warranted.

**C. Conclusion**

Defendants' compliance with the action items denoted in bold above is due by **November 23, 2026**. The Court will take up Plaintiff's motion to appoint counsel in the near future.

SO ORDERED, this 2nd day of November, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge